UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------- X
CARIDAD MEDINA, individually and as parent and natural guardian of Infant A.S., BRIANA SPENCER, and DOUGLAS SMALLS,

       Plaintiffs,

  -against-

SUFFOLK COUNTY DETECTIVE BRIAN STEVENS,

       Defendant.
---------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

21-cv-1964 (BMC)

**COGAN**, District Judge.

  This action under 42 U.S.C. § 1983 raises two issues, now before me on defendant's motion for summary judgment. First, where defendant Detective Brian Stevens obtained a search warrant expressly covering the entirety of a two-apartment house, did he have enough information so that he knew or should have known to exclude one of the apartments – the plaintiffs' apartment – from the warrant application? Second, in conducting the search of what turned out to be the wrong apartment, did Det. Stevens spend an unreasonable amount of time verifying that the suspect for whom the responding police officers were searching did not reside in that apartment and that there was no contraband in that apartment?

  The second question is easily answered in the negative. The search, conducted by other police officers, had virtually concluded by the time Det. Stevens arrived, and he was not in plaintiffs' apartment for more than 10-15 minutes, according to plaintiffs. This was not an

inordinate amount of time to ensure that plaintiffs' apartment was safe and did not contain contraband.

The first question is closer. Nevertheless, all of the material facts that Det. Stevens had at the time of the search were laid out in the warrant application, and some of those facts pointed to drug activity at least in front of the two-apartment house by persons who might have been the other apartment's occupants, both of whom were ultimately arrested.[1]

In assessing objective reasonableness in § 1983 actions, federal courts need to be careful not to apply hindsight in determining whether an investigation could have been done more effectively or thoroughly. Det. Stevens had reason to believe that drugs were being dealt from the house in question. In retrospect, a more thorough investigation might have narrowed the suspect premises to exclude plaintiffs' apartment, but the circumstances on which the warrant for the entire house was obtained were disclosed in his affidavit, and the warrant was issued based on those circumstances. Especially considering the qualified immunity overlay on the issue of objective reasonableness, plaintiffs have not overcome the presumption of probable cause created by the state court judge's decision to issue the warrant.[2]

## BACKGROUND

I.   **The Affidavit in Support of the Warrant**

The house at 38 Clifford Street, Huntingdon, New York ("38 Clifford") came to the attention of the Suffolk County Police Department based on neighbors' reports of drug activity occurring there. Based on an investigation, Det. Stevens applied for and obtained a no-knock search warrant. The warrant authorized the search of "the entire premises located at 38 Clifford

---

[1] The occupants of Apartment 38A were Jimmy Betts, Sr., his son Jimmy Betts Jr., and his son Kyirei Betts. For purposes of this order, "Betts" refers to Jimmy Betts Jr.

[2] The Court expresses its appreciation for the high quality of both sides' briefing on this motion.

2

Court." Since plaintiffs are challenging whether the application for the warrant contained misstatements or omissions, we must look at what Det. Stevens' affidavit stated:

- It alleged that based upon his own investigation, conversations with fellow police officers, and a thoroughly established and vetted confidential informant, Det. Stevens believed that "there is cocaine located within the entire premises located at [38 Clifford]."

- It identified the subject of the search as both the house and "the person of Jimmy Betts," and that the contraband being searched for was drugs, drug-business records, money obtained from that business, and drug paraphernalia. It noted that Betts had five prior convictions, at least two of which were drug-related.

- It described 38 Clifford as "a ranch style mother/daughter house with brownish/tan siding and brick beneath. The house has a reddish shingled roof. There is an asphalt driveway on the west side of the property which leads to the side of the house and an entry way to a side door where there is believed to be a basement apartment. There is a concrete pathway that extends from the top left of the driveway to a concrete stairway, with three concrete steps, that leads to the front entry door. There is a glass storm door in front of the door that leads into the front of the house. There is a black mailbox at the east side of the property with the numerals '38B' affixed in white. There is a black chain link fence surrounding the front of the property. On the black chain link fence near the west side of the property there is another black mailbox with the numerals '38A' affixed."

The affidavit then described a number of activities involving 38 Clifford that directly involved or were strongly suggestive of drug dealing.

The first two of these were controlled buys on separate dates. Police sent a confidential informant ("CI") to unspecified locations in Huntingdon Station; each time, they observed a hand-to-hand exchange for cash between the CI and Betts; each time, Betts was observed leaving "38 Clifford Court … immediately prior to the sale" to the CI and returning there "immediately after the sale"; and each time, the drugs bought by the CI tested positive for cocaine. The CI had participated in drug deals with Betts in front of 38 Clifford but had never been in the house.[3]

---

[3] Plaintiffs attempt to dispute this fact in their response to defendant's Local Rule 56.1 statement, but Det. Stevens's testimony was clear that the CI told him that he had never been inside the house. Plaintiffs question the credibility

The other observations, highly suggestive of illegal drug transactions, were observed by police officers occurring at "38 Clifford Court." The first was either two transactions or one transaction involving multiple parties. Det. Stevens's affidavit described it as follows:

> A black male[4] exited the target location [38 Clifford] and entered a brownish colored BMW suburban. The black male drove to the corner of 11th Avenue and Craven Street and stopped on the south side of Craven Street. A white male walked over to the brownish suburban and leaned in the driver's side window. A hand to hand transaction was observed between the black male and the white male. The white male walked away east bound on Craven Street. The black male drove away west bound on Craven Street and returned to the target location approximately two minutes later. Then, a four door light colored Infiniti operated by a black female pulled in front of the location from 11th Avenue. A black male exited the front door of the residence and approached the vehicle. The black male leaned in the driver's side of the vehicle. A hand to hand transaction [was] conducted between the black male and the black female. The black female drove away east bound on Clifford Court and made a left heading north bound on 11th Avenue. The black male walked back to the target location and re-entered in under a minute through the front door.

The next incident of suspicious activity reported in the affidavit occurred two days later:

> A white pick up truck operated by a white male pulled up just west of the target location from 11th Avenue. A few minutes later a black male exited the target location from the front door and walked over to the white pick up truck. The black male leaned into the driver's side of the white pick up truck. A hand to hand transaction [was] observed between the two. The white pick up drove away west on Clifford Court towards Foxwood Drive East and made a right hand turn going north bound. The black male walked back to the target location and re-entered the target location in under two minutes. Then, a black male exited the target location and walked west bound on Clifford Court towards Foxwood Drive East. The black male made a right on Foxwood Drive East and walked north bound towards Craven Street. The black male stopped and waited on the south side of Craven Street just east of Stepar Place. A white male on a bicycle approached the black male east bound on Craven Street from Oakwood Road. The black male signaled towards the white male. The white male stopped his bicycle and met up with the black male. A hand to hand transaction [was] conducted between the white male and the black male. The white male turned around and rode away in his bicycle westbound on Craven Street towards Oakwood Road. The black male

---

of this statement, but it is far from uncommon for drug dealers to keep customers outside of their stash houses, holding only the quantity of drugs necessary for the transaction, to prevent robberies.

[4] Although the search warrant never explicitly identifies Betts as a black male, it is easily inferred (from the warrant itself and the record) that the warrant authorizing a search of Betts, indeed, described the person Stevens believed to be Betts.

walked west bound on Craven Street, then made a left and headed south bound on Foxwood Drive East. The black male then made a left turn heading east bound on Clifford Court and return[ed] to the target location.

The final suspicious activity occurred two days after that:

A black male exited the target location and walked east bound on Clifford Court toward 11th Avenue. The black male stopped at the corner of 11th Avenue and Clifford Court. A Hispanic male and Hispanic female walked north bound on 11th Avenue and approached the black male. The Hispanic female met up with the black male as the Hispanic male appeared to act as a look out. The black male and the Hispanic female conducted a hand to hand transaction. The Hispanic female rejoined the Hispanic male and they walked away south bound on 11th Avenue. The black male walked away west bound on Clifford Court and returned to the target location and re-entered through the front door. Then, a dark colored SUV operated by a white or Hispanic male pulled in front of the target location just west of the driveway from 11th Avenue. A black male exited the target location from the front door and walked over to the dark SUV. The black male leaned in the driver's side of the dark SUV. A hand to hand transaction [was] observed. The dark SUV drove away west bound on Clifford Court, then made a left heading south bound on Foxwood Drive East. The black male walked back to the target location and re-entered the target location in under a minute.

Based on this information in the affidavit, a Judge of the District Court, Suffolk County, issued a no-knock search warrant for "the entire premises located at 38 Clifford Court."

## II.     Execution of the Warrant

Det. Stevens did not arrive at 38 Clifford when the search began. The search was initially conducted by the Suffolk County Police Department's ("SCPD") Emergency Services Unit ("ESU") and perhaps other detectives who forcibly breached both the front and the side doors. The officers found two apartments without connecting access and arrested Betts and his son (Kyirei Betts) in Apartment 38A (the downstairs, side door apartment), charging them with possession of drugs and paraphernalia. They found 5 grams of crack cocaine, along with 9 oxycodone pills, a quantity of marijuana, a scale, 3 cell phones, drug packaging and paraphernalia, assorted .22 caliber ammunition rounds, 12-gauge shotgun shells, $1543 in cash, and counterfeit currency.

5

The ESU officers also found plaintiffs, a mother and her three children, getting up for work and preparing for school in Apartment 38B (the upstairs, front door apartment). Rifles were pointed at the mother and some of the children, and some or all were handcuffed while the ESU officers searched the apartment, finding only one marijuana plant in one of the children's rooms. The search of Apartment 38B took about 20-25 minutes. Det. Stevens arrived about 10-15 minutes into the search, joined other detectives who were there and who briefly spoke with plaintiffs, and then the search of that apartment ended and plaintiffs were released. Damage to plaintiffs' apartment (38B) was minimal.

## DISCUSSION

### I. The Search Warrant Was Supported by Probable Cause

A search conducted pursuant to a warrant entered by a duly authorized judicial officer is presumed reasonable under the Fourth Amendment. See Franks v. Delaware, 438 U.S. 154, 171-72 (1978). In the context of an action under 42 U.S.C. § 1983, however, that presumption is generally worth little as a practical matter, as the plaintiff will contend that the officer applying for the warrant either lied in the warrant application, or deliberately omitted material facts that would have dissipated the inference of probable cause, or recklessly disregarded important information that would have affected the judge's determination – and if the plaintiff establishes any of those scenarios, the presumption falls away. See Golino v. New Haven, 950 F.2d 864, 870-71 (2d Cir. 1991). Nevertheless, the inquiry in a § 1983 action – whether a search was based on a warrant or not – is not whether plaintiff actually committed a crime or a location contained contraband, but whether it was objectively reasonable for the investigating officer to believe that he had or it did. See Walczyk v. Rio, 496 F.3d 139, 163 (2d Cir. 2007) (citing Golino, 950 F.2d at 870).

The issue in this case is whether the affidavit that Det. Stevens submitted gave him, and therefore the issuing judge, an objectively reasonable basis to believe that either contraband and/or Betts was likely to be found in the entire house as opposed to just part of it. His affidavit was certainly thorough in setting out why he believed that.

First, in describing 38 Clifford, Det. Stevens did not obscure in any way that the building potentially contained two living spaces. He referred to it as a "ranch style mother/daughter house." In common parlance and under the Town of Huntingdon Code, that means a single floor (plus basement), single family dwelling that has been converted into two residences for use by one extended family. See Town of Huntington Code, ch. 198, art. XX, § 198-134 (referring to this type of arrangement as an "accessory dwelling unit"). He correctly described the driveway on one side of the house leading to the side entry door (to Apartment 38A) and that he believed that to be the basement apartment, and that the driveway also contained steps leading to the front entry door (to Apartment 38B). Finally, Det. Stevens accurately described the placement of the mailboxes for both Apartment 38A (side door) and Apartment 38B (front door); apparently, those mailboxes contained no markings other than the apartment numbers.

Second, the drug activity described in Det. Stevens' affidavit also implicated the entire house – on the controlled buys, Betts was seen leaving from 38 Clifford and returning there immediately prior to and after the transaction. On a number of the hand-to-hand transactions in front of or near 38 Clifford, a black male was seen exiting the front door of 38 Clifford, engaging in the transaction(s), returning to 38 Clifford, and entering its front door – which did *not* lead to Apartment 38A (the side door/downstairs apartment where Betts was ultimately found to reside), but to Apartment 38B (plaintiffs' front door/upstairs apartment). Finally, Det. Stevens could not positively identify the black male as Betts but believed that it was him.

7

Plaintiffs nevertheless claim that the warrant application is "littered with reckless and material misstatements and omissions." I don't agree.

First, plaintiffs claim that Det. Stevens's description of the "entire premises" as being used to deal drugs was a falsehood. They rely principally on Det. Stevens's deposition, but they misleadingly characterize the excerpt upon which they are relying. What Det. Stevens testified to was that although he didn't think that drugs were being dealt out of *both* apartments in the building, he didn't know which of the two apartments Betts lived in. He therefore needed the warrant to authorize the search of the "entire premises."

That was unnecessary, however, according to plaintiffs, because there is an "Internal Recording System" within the SCPD which allows investigators to insert a suspect's name into a program and to have the program respond with the suspect's residential information. When Det. Stevens used that system at the beginning of the investigation, it showed Betts living at "38 Clifford Court" and "38A Clifford Court" – but not "38B Clifford Court."

The absence of a hit for Apartment 38B strikes me as a very thin reed upon which to contend that Det. Stevens should have entirely excluded that apartment from his warrant application. By listing Betts at 38 Clifford without reference to a specific apartment, the system left it unclear from which apartment the drug dealing was occurring, even though it also separately referenced Apartment 38A. And it cannot be overlooked that someone, although not positively identified as Betts, was observed on several occasions entering and leaving Apartment 38B (i.e., through 38 Clifford's front door) immediately before and after participating in hand-to-hand drug transactions.

But there is more, according to plaintiffs. Whoever was conducting the surveillance of 38 Clifford – including Det. Stevens – would surely have been able to confirm that Betts was

8

leaving from and returning to Apartment 38A. After all, plaintiffs note, Det. Stevens had binoculars for the express purpose of observing the activity at the house.

I am not so sanguine. As an initial matter, some portions of the warrant describing controlled buys only state that Betts was "returning to his residence," not naming the specific apartment (or door he used), and Det. Stevens was not entirely sure that the black male was Betts. Indeed, plaintiffs have not developed the record to show that the surveilling officers were so close that they were able to observe whether the side door was being used – they were certainly not going to be parked right across the street nor in any location that would create an undue risk of exposing their surveillance. It is one thing to observe activity at the house or people entering the front door, as Det. Stevens' affidavit and the underlying investigative submissions represented; it is quite another to say that the suspect was *only* observed entering and exiting a side door to the house, which turned out to lead to where Betts lived. These are the kind of considerations that officers must weigh in the balance in making determinations of whether there is probable cause to apply for a warrant.

Could more investigation have been done? Undoubtedly. Maybe the CI could have persuaded Betts to sell him a higher quantity from inside his particular apartment, although that seems unlikely. Maybe an aerial drone with a high resolution camera might have better tracked Betts' comings and goings more closely than human surveillance had done and allowed police officers to more definitively determine if it was Betts or another black male entering the front door who had engaged in the hand-to-hand transactions (although even if it was confirmed that it was another black male and not Betts, a search of the entire house would still have been supported by probable cause). Plaintiffs also suggest that the police should have allowed the investigation to play out over a longer period to try to get better intelligence about which

9

apartment Betts lived in. But with multiple illegal drug transactions occurring over a period of days and every one of them carrying a risk of overdose and violence, as illegal drug transactions do, it was within Det. Stevens's discretion – and the issuing judge – to determine that there was sufficient probable cause to proceed with the search. Indeed, had there been the exigency that plaintiffs say was required to obtain this search warrant, Det. Stevens wouldn't have needed a search warrant at all. See Kentucky v. King, 563 U.S. 452, 460 (2011).

An investigation doesn't have to be conclusive or even perfect to give rise to probable cause. This one was more than good enough; the investigation was fully articulated in Det. Stevens's affidavit; a judge found probable cause; and plaintiffs have not overcome the presumption.

## II. Alternatively, Det. Stevens Is Protected by Qualified Immunity

Even if Det. Stevens should have more thoroughly investigated to exclude plaintiffs' apartment from the search warrant, he would still be protected by qualified immunity for not having done so. Police officers are protected by qualified immunity unless their conduct "clearly violates" a citizen's constitutional rights. See Harlow v. Fitzgerald, 457 U.S. 800, 817-18 (1982). Although the right to be secure in one's home under the Fourth Amendment is one of the most well-established rights under our Constitution, that right must be measured against the facts in the particular case to determine whether the police officer was on notice that his actions amounted to a violation of the Constitution. See Ashcroft v. al-Kidd, 563 U.S. 731, 742-43 (2011).

It is one thing if a police officer deliberately misrepresents or mischaracterizes material facts in a warrant application. In that kind of situation, the officer is unlikely to be viewed either as objectively reasonable, nor will the lack of a factually analogous Supreme Court or Second

Circuit case entitle him to qualified immunity. But in an action like this one, where a police officer sets forth all of the material facts in a warrant application, and the issue is whether the officer should have taken more investigative steps to exclude a part of the subject premises from search, it seems to me the issuing magistrate is better equipped to make that determination in the first instance than is a § 1983 court with the benefit of hindsight.

Plaintiffs point to no analogous authority where a police officer was found to have acted unreasonably by not narrowing a search to one apartment when there was evidence implicating both apartments in a building. Where the issue is the sliding scale of circumstances necessary to constitute probable cause on a particular fact pattern, qualified immunity is particularly appropriate.

### III. Det. Stevens Has No Liability For The Execution Of The Warrant

Plaintiffs have narrowed their unreasonable search claim to one solely of timing: Det. Stevens remained at 38 Clifford longer than he should have. Plaintiffs' argument is that as soon as he entered Apartment 38B, he saw that the stairway was blocked off from Betts's Apartment 38A. They argue that this, coupled with the report from the SCPD Internal Recording System telling him that Betts lived at "38 Clifford Street" and "38A Clifford Street," and plaintiff Medina telling him that Betts lived downstairs, should have caused Det. Stevens to walk out of Apartment 38B immediately, or virtually immediately.

Looking at the events realistically, however, Det. Stevens was in 38 Clifford for at most 15 minutes, probably less. There had been observations of someone entering and leaving that apartment – if not Betts, another black male – in connection with drug transactions. It didn't violate the Constitution for him to check out the situation, confer with other officers, and confirm that there was no other entry to Apartment 38A except through the side door.

11

## CONCLUSION

For the foregoing reasons, Det. Stevens's motion for summary judgment is granted.

**SO ORDERED.**

*Brian M. Cogan*
U.S.D.J.

Dated: Brooklyn, New York
       October 10, 2024